IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONNA EDWARDS | : | CIVIL ACTION |
|---|---|---|
| v. | : : : | NO. 17-5260 |
| MONUMENTAL LIFE INSURANCE COMPANY | : : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                            **December 11, 2017**

In a creative twist to possibly increase the value of a claim her husband's life insurer wrongly denied coverage, a beneficiary pleads the denial of coverage both breaches the insurance policy and states a claim for unfair, fraudulent or deceptive trade practices. She does not allege bogus applications or deceptive conduct. Absent such a specific allegation, we cannot convert a well-plead breach of life insurance policy claim into a statutory claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. We grant the insurer's motion to dismiss her statutory claim in the accompanying Order. But as the beneficiary may have specific facts, we will allow her leave to amend to plead specific facts giving rise to a statutory claim.

### I. Alleged Facts

On September 1, 2004, Troy Wilson purchased a life insurance policy from Monumental Life Insurance Company[1] naming his wife Donna Edwards as "the sole primary beneficiary."[2] The life insurance policy "provided for $25,000 in basic life benefits, plus "Additional Benefits" comprised of $50,000 in accidental death benefits and $25,000 in guaranteed insurability benefits."[3] Mr. Wilson paid and Monumental accepted the premiums for the insurance policy.[4] Mr. Wilson "sustained multiple bodily injuries resulting in his death" from a July 11, 2011

motorcycle accident.[5] Ms. Edwards placed Monumental on notice of Mr. Wilson's death as required by the policy and "made a claim for benefits under said policy as the sole primary beneficiary."[6] Monumental denied Ms. Edwards's claim for Additional Benefits "contending that [her] claim was excluded from coverage."[7]

Ms. Edwards claims Monumental promised: "If the Insured dies while the policy is in force...we will pay the Death Benefit to the Beneficiary [...] The Death Benefit ...is that shown as the Face Amount in the Policy Specifications, plus the Additional Benefits, if any."[8] With regard to "Accidental Death Rider" benefits, Ms. Edwards alleges Monumental also promised: "We will pay the beneficiary an Accidental Death Benefit when we receive proof of the Insured's Accidental Death. Accidental Death means death that: 1. Resulted directly and independently of all other causes, from drowning or from accidental bodily injury sustained while this rider is in force; and..."[9] Ms. Edwards also alleges under the "Guaranteed Insurability Rider," Monumental promised: "While this Rider and your Policy are in force we agree to issue an additional policy of insurance without evidence of insurability...The additional policy of insurance issued shall: (a) Cover only the life of the Insured; (b) Be for an Amount of Insurance not more than the Amount of this Rider shown on the Policy Specifications page;..."[10]

Ms. Edwards sued Monumental claiming breach of contract and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).[11] Ms. Edwards alleges Monumental violated the UTPCPL "generally" and by denying the policy benefits: (1) "without conducting an adequate investigation into the cause of the accident or Mr. Wilson's resulting death;" (2) "based on a policy exclusion which was invalid or otherwise inapplicable;" (3) "without any factual basis;" and (4) "without any legal basis."[12] Ms. Edwards also claims Monumental engaged in "fraudulent or deceptive conduct which created the likelihood of

2

confusion or misunderstanding."[13] She alleges no facts in support of these allegations other than breach of a promise.

## II.   Analysis[14]

Monumental moves to dismiss Ms. Edwards's UTPCPL claim.[15] The UTPCPL prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[16] "To state a claim under the UTPCPL, a plaintiff must show: (1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury."[17] A private action arises for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful."[18]

An insurance company's refusal to pay benefits alone is insufficient to plead a UTPCPL claim.[19] "[O]nly malfeasance, the improper performance of a contractual obligation," raises a UTPCPL cause of action in Pennsylvania.[20] In *Gordon v. Pennsylvania Blue Shield*, the court dismissed a UTPCPL claim concluding the only alleged act "was the refusal of [the defendant insurance company] to pay benefits to which [the plaintiff] felt entitled" and "[n]onfeasance alone is not sufficient to raise a claim pursuant to the Unfair Trade Practices and Consumer Protection Law."[21] The court defined "nonfeasance" as "the mere failure to perform."[22]

The purpose of the UTPCPL is fraud prevention.[23] "*[E]very* plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct" of the defendant.[24] The plaintiff must establish "'a causal connection to or reliance on the alleged misrepresentations' of the defendant."[25] A plaintiff "must demonstrate the level of reliance that accompanies a common law fraud claim" as

3

"the legislature did not intend to remove the common law elements of reliance and causation that attend a fraud action."[26] In *Weinberg v. Sun Co., Inc.*, the court held the plaintiff must allege she "suffer[ed] an ascertainable loss *as a result* of the defendant's prohibited action."[27]

Ms. Edwards does not cite a specific section of the UTPCPL but seems to rely on the catch-all in 73 P.S. § 201-2(4)(xxi), "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."[28] Before 1996, the UTPCPL's catch-all provision prohibited only "'fraudulent conduct' that created a likelihood of confusion or misunderstanding" and required plaintiffs to plead common law fraud elements when bringing a UTPCPL claim under § 201-2(4)(xxi).[29] The Pennsylvania General Assembly amended § 201-2(4)(xxi) in 1996 to include "any other fraudulent *or deceptive conduct* which creates a likelihood of confusion or of misunderstanding."[30] Adding the "deceptive conduct" language, the General Assembly meant something different than fraud. "It is a basic principle of statutory interpretation in Pennsylvania that '[b]ecause the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect.'"[31] "Furthermore, '[w]here words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction.'"[32]

Contrary to Monumental's argument, Ms. Edwards is not required to plead the elements of common law fraud or to do so "with the particularity required for pleading fraud claims" under Fed. R. Civ. P. 9(b) to support her UTPCPL claim under § 201-2(4)(xxi).[33] The Pennsylvania Supreme Court has not directly addressed the pleading requirements for a UTPCPL claim under § 201-2(4)(xxi)'s catchall provision. But in *Yenchi v. Ameriprise Finanicial, Inc.*, the Pennsylvania Supreme Court distinguished between the pre and post 1996 amendment language and acknowledged a claim arising from conduct occurring before to the 1996

4

amendment "required proof of common law fraud" because the pre-1996 provision prohibited only "fraudulent conduct."[34] Ms. Edwards must plead facts of "deceptive conduct." In *Walkup v. Santander Bank, N.A.*, our colleague Judge Beetlestone acknowledged the Pennsylvania Supreme Court has not yet addressed the pleading requirements for a UTPCPL claim brought under the 1996 amendment and instead looked to the rulings of Pennsylvania's lower courts and basic statutory interpretation principles.[35] Judge Beetlestone concluded "the 1996 amendment to the UTPCPL expanded liability to include 'deceptive conduct,' which does not rise to the level of fraud" and a claim brought under § 201-2(4)(xxi) does not require plaintiffs to plead common law fraud elements.[36]

In *Walkup*, Judge Beetlestone instead applied "the general plausibility pleading standard set forth in *Twombly* and *Iqbal*," which "requires that all claims be supported with enough factual specificity to demonstrate a plausibility of success," to the plaintiff's deceptive conduct claims alleged under the UTPCPL's catch-all provision.[37] The plaintiffs in *Walkup* mostly alleged "conclusory assertions regarding generalized misrepresentation or deceptive conduct" by the defendant, but Judge Beetlestone analyzed "three specific factual allegations" in support of the plaintiffs' claim they relied on defendant's advice when they stopped making mortgage payments.[38] After analyzing the specific factual allegations, Judge Beetlestone correctly concluded plaintiffs failed to articulate "a factually plausible account of their extensive reliance on [d]efendants' conduct" as "[t]here is no allegation in the [complaint] that [the defendant] told [p]laintiffs they would receive a modification if they defaulted or even that a modification was likely."[39]

Applying these principles, Ms. Edwards fails to plead facts showing Monumental engaged in deceptive conduct and she justifiably relied on Monumental's alleged deceptive

5

conduct as required to bring a UTPCPL claim.[40] Unlike in *Walkup*, where the plaintiffs pleaded "three specific factual allegations" to support their claim of justifiable reliance on alleged deceptive conduct and misrepresentations, Ms. Edwards pleads conclusory statements Monumental "engag[ed] in fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding" without alleging facts of Monumental's deceptive conduct and her justifiable reliance on its deceptive conduct.[41] Applying "the general plausibility pleading standard set forth in *Twombly* and *Iqbal*" applied by Judge Beetlestone in *Walkup*, we cannot conclude Ms. Edwards's UTPCPL claim is "supported with enough factual specificity to demonstrate a plausibility of success."[42]

Ms. Edwards also fails to plead Monumental's denial of benefits constituted malfeasance. As in *Gordon v. Pennsylvania Blue Shield* where the court dismissed the UTPCPL claim alleging only the insurer refused to pay benefits, Ms. Edwards's UTPCPL claim is based on the nonfeasance of Monumental's alleged denial of benefits. Mere allegation of nonfeasance is insufficient to plead a UTPCPL claim. [43] Ms. Edwards must allege Mutual acted with "malfeasance, the improper performance of a contractual obligation" to plead a UTPCPL claim.[44] She has not done so.

Ms. Edwards argues her broadly worded pleading should be sustained based on a general pleading of failing to perform policy obligations, citing *Fields v. Gerber Life Insurance Company*.[45] Unlike *Fields'* allegations of bogus insurance applications used to deny coverage,[46] Ms. Edwards asserts no conduct which could arguably be construed as fraudulent or deceptive. Her claim is only breach of the policy's promises.

6

### III. Conclusion

Ms. Edwards challenges Monumental's denial of "Additional Benefits" from the life insurance policy secured by her husband before he passed. Ms. Edwards alleges Monumental breached a contract and violated § 201-2(4)(xxi) of the UTPCPL. While Ms. Edwards alleges a denial of her policy benefits, she does not plead Monumental engaged in deceptive conduct, she suffered an ascertainable loss, she justifiably relied on Monumental's alleged deceptive conduct, or reliance on Monumental's alleged deceptive conduct caused an injury. She does not plead Monumental acted with malfeasance and she relied on the malfeasance which caused her an ascertainable loss as a result of her reliance. In the accompanying Order, we grant Monumental's motion to dismiss the UTPCPL claim with leave to amend consistent with Fed. R. Civ. P. 8 and 11.

---

[1] Monumental is now operating under the name Transamerica Premier Life Insurance Company. We will refer to Monumental as Ms. Edwards addressed the company in the Complaint.

[2] ECF Doc. No. 1-2 at ¶¶ 8-9.

[3] *Id.* at ¶ 20.

[4] *Id.* at ¶ 10.

[5] *Id.* at ¶ 12.

[6] *Id.* at ¶ 13.

[7] *Id.* at ¶ 27.

[8] *Id.* at ¶ 23.

[9] *Id.* at ¶ 24.

[10] *Id.* at ¶ 25.

[11] ECF Doc. No. 1-2.

[12] ECF Doc. No. 1-2 at ¶¶ 32-33.

[13] *Id.* at ¶¶ 33(e).

[14] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Our Court of Appeals requires we apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[15] ECF Doc. No. 3.

[16] 73 P.S. § 201-3.

[17] *Pellegrino v. State Farm Fire and Cas. Co.*, 2013 WL 3878591, *8 (E.D.Pa. 2013) (citing *Caroselli, Sr. v. Allstate Prop. & Cas. Ins. Co.*, 2010 WL 3239356, *7 (E.D.Pa. 2010)).

[18] 73 Pa. Stat. Ann. § 201-9.2.

[19] *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600, 604 (Pa. Super. 1988).

[20] *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995)(citing 73 P.S. § 201-1).

[21] *Gordon*, 548 A.2d at 604; *see also Horowitz*, 57 F.3d at 307 (upheld district court's granting of summary judgment to the insurance company on the UTPCPL claim when the plaintiffs only

alleged the insurance company refused to pay the benefits).

[22] *Gordon*, 548 A.2d at 604.

[23] *Comm., by Creamer v. Monumental Properties, Inc.*, 329 A.2d 812, 816 (Pa. 1974).

[24] *Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 10-11 (Pa. Super. 2004).

[25] *Id.* (citing *DiLucido v. Terminix International, Inc.*, 676 A.2d 1237, 1241 (Pa. Super. 1996)).

[26] *Id.* (citing *Weinberg v. Sun Co.,* 565 Pa. 612, 618, 777 A.2d 442, 446 (Pa. 2001)).

[27] *Weinberg,* 618, 777 A.2d at 446 ("a plaintiff must allege reliance, that he purchased Ultra® because he heard and believed Sunoco's false advertising that Ultra® would enhance engine performance. In addition, the statute requires him to allege that he purchased the gasoline for personal or household purposes as opposed to business purposes, that he drove a vehicle whose engine would not benefit from the high octane of Ultra®, as well as the amount he purchased in order to establish the amount of his ascertainable loss.).

[28] 73 P.S. § 201-2(4)(xxi).

[29] *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. 2012)

[30] 73 P.S. § 201-2(4)(xxi)(*emphasis added*).

[31] *Walkup v. Santander Bank, N.A.*, 147 F.Supp.3d 349, 361 (E.D.Pa. 2015) (quoting *Allegheny Cnty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (2004)).

[32] *Id.* (quoting *CSC Enters., Inc. v. State Police, Bureau of Liquor Control Enforcement*, 782 A.2d 57, 63 (Pa.Commw.Ct.2001)).

[33] *Id.*

[34] *Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, n. 4 (Pa. 2017).

[35] *Id.* ("It is a basic principle of statutory interpretation in Pennsylvania that '[b]ecause the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect.'" *Allegheny Cnty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (2004). "Furthermore, '[w]here words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction.'" *CSC Enters., Inc. v. State Police, Bureau of Liquor Control Enforcement*, 782 A.2d 57, 63 (Pa.Commw.Ct.2001)).

[36] *Id.*

[37] *Id.*

[38] *Id.* at 361-62.

[39] *Id.* at 362.

[40] *Pellegrino,* 2013 WL 3878591, at *8 (citing *Caroselli, Sr.,* 2010 WL 3239356, at *7).

[41] ECF Doc. No. 1-2 at ¶ 33(e).

[42] *Walkup,* 147 F.Supp.3d at 361.

[43] *Gordon,* 548 A.2d at 604.

[44] *Horowitz,* 57 F.3d at 307 (citing 73 P.S. § 201-1).

[45] No. 14-727, 2014 WL 4348171, *5 (W.D.Pa. Sept. 2, 2014).

[46] *Id.* at *2.